IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| JENNIFER S. DOLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:09CV156 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Jennifer S. Dolan, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability Benefits (DIB). The Commissioner's final decision is based on a finding by an Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

# I. PROCEDURAL HISTORY

Plaintiff filed for DIB on June 19, 2006, claiming disability due to back injury, migraine headaches, and depression, with an alleged onset date of August 12, 2005. (R. at 74–79, 87.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 57-61, 63-65.) On December 21, 2007, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 27.) On May 19, 2007, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act because based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 9–18.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1–3.)

# II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

# III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

(SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).
[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).
[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis

past." 20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will not be awarded.  Id.  However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his burden in the final step with the testimony of a VE.  When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability.  (R. at 11.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disk disease of the lumbosacral spine with an L5-S1 hearniated

---

(i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  Id.  (footnote omitted).

disc, sacroilitis[6] with possible ankylosing spondylitis,[7] and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 11–12 .) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she could lift only five pounds frequently and ten pounds occasionally, sit up to six hours of an eight-hour workday, and she required a sit/stand option allowing her stand every thirty minutes for a period of three minutes. (R. at 13.) Additionally, the ALJ determined that, due to Plaintiff's pain and depression, she was limited to performing "simple, routine tasks." (R. at 13.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a psychiatric technician as that job required medium exertion beyond her RFC. (R. at 16.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 17.) Specifically, the ALJ found that Plaintiff could work as an addresser, a call-out operator, and a charge account clerk. (R. at 17.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 18.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) substantial evidence supported

---

[6] Sacroilitis is inflammation or arthritis in the joint between the scrum and the ilium. Dorland's Medial Dictionary (30th ed.).
[7] Ankylosing spondylitis is a form of degenerative joint disease that affects the spine. Dorland's Medial Dictionary (30th ed.). It is a systemic illness of unknown etiology, affecting young persons predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, invertebral, and costovertebral joints. Id.

a conclusion that her migraine headaches were a severe impairment; (2) the ALJ erred in discounting Plaintiff's credibility; and (3) the ALJ incorrectly evaluated how Plaintiff's depression affects her RFC. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 8.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") 18.)

> **1. Plaintiff contends that the ALJ's determination that her migraine headaches are not a severe impairment is not supported by substantial evidence**.

Plaintiff argues that the ALJ erroneously determined that her migraine headaches are not a severe impairment. (Pl.'s Mem. at 11-16.) Specifically, Plaintiff contends that the reasons articulated by the ALJ in support of the finding that Plaintiff's migraines were not a severe impairment are not supported by the record. (Pl.'s Mem. at 11-16.)

In order for an impairment to be considered "severe," it must "significantly limit[] [claimant's] physical or mental ability to do basic work activities . . ." 20 C.F.R. §§ 416.920(c), 404.1520(c). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to do work . . . ." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). An ALJ is charged with determining whether medical evidence exists in the administrative record to demonstrate whether a certain alleged impairment is severe, thereby affecting the claimant's ability to do work, and it is therefore the duty of the Secretary [or Commissioner], not the courts, to resolve conflicts in the evidence contained in the record, "and it is immaterial that the evidence before him will permit a conclusion inconsistent with his.

[Citation omitted]. If his findings are supported by substantial evidence, the courts are bound to accept them." Schoofield v. Barnhart, 220 F. Supp. 2d 515, 518-19 (D. Md. 2002).

The ALJ determined that the Plaintiff's headaches were not a severe impairment based on the following: (1) the results of the Plaintiff's neurological examination and CT scan were normal, (2) the Plaintiff reported that her headaches had improved with an increased dosage of Topomax, and (3) the record reflected no treatment for migraine headaches other than a single prescription of medication for the condition by Dr. Donna Gamache. (R. at 12.) Thus, the ALJ concluded that the Plaintiff's migraine headaches had no more than a minimal effect on her ability to function on a regular and continuing basis. (R. at 12.)

There is little question from the record that the Plaintiff suffers from migraine headaches. (R. at 280-82, 287, 292, 294-95, 297, 302, 304, 305, 308-10, 393-94, 397, 468-69.) These headaches were characterized as daily, throbbing, and nausea inducing. Her headaches were aggravated by her use of Lyrica, but she discontinued use of this medication in June of 2006 and experienced a decrease in severe migraines, but continued to have "mini migraines" and intermittent stabs of discomfort. (R. at 280.) Additionally, the Plaintiff testified that her migraines persist and continue to impair her ability to function normally. (R. at 36, 207.) Plaintiff began treating for her headaches with Dr. Erwin in March of 2006. (R. at 280.) From that treatment record, it can be determined that a "relatively low dose" of Topomax helped the Plaintiff "feel much better" and that her headaches persisted, but were only "annoying." (R. at 280.) However, the same record indicates that the medication may not have adequately suppressed those occasions of breakthrough throbbing headaches that debilitate the Plaintiff. (R. at 280.) This conclusion is supported by the fact that the Plaintiff asked what could be done if

8

the next series of treatment continued to prove ineffective, indicating the prior treatment methods had failed. (R. at 280.)

However, the issue becomes problematic in that there is no further follow-up in the record that indicates the new measures were not successful. There is no further treatment report which demonstrates the Plaintiff sought additional medical assistance after June 2006 because the new measures did not suppress the breakthrough headaches. Plaintiff had the burden of showing that the treatment she was receiving was not successful and that her debilitating migraines persisted. There is no evidence in the record to demonstrate that the migraine treatment she received in June of 2006 was unsuccessful; rather, Plaintiff's records show the opposite – that she was experiencing improvement with an increased dosage of Topamax and Axert for her more severe headaches. (R. at 280.) Based on the reported improvement of the Plaintiff's headaches and the absence of any further treatment for that condition, the ALJ's assessment of the Plaintiff's migraines was supported by substantial evidence in the record and his conclusions relied on appropriate medical evidence. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's migraine headaches are based on substantial evidence in the record and should not, therefore, be overturned.

2. **Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility.**

Plaintiff argues that the ALJ improperly evaluated her credibility because there was not substantial evidence in the record to support the conclusion reached and the ALJ failed to apply the appropriate standard of evaluation. (Pl.'s Mem. at 16-21.) In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig, 76 F.3d at 594; see also Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996); 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically

9

determinable physical or mental impairment or impairments that reasonably could produce the individual's pain, limitations, or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

At the hearing before the ALJ, in support of her subjective complaints of pain and limitations as a result of her impairments, Plaintiff testified that she experiences ongoing pain

10

across her lower back and down through her legs and hips. (R. at 32.) She further testified that her pain was exacerbated by walking on hard surfaces, repetitive bending, and driving. (R. at 32-33.) She stated that she could not walk on concrete for more than five minutes, could not drive or sit in a car for more than thirty minutes to an hour, and struggled with performing housework, especially laundry, vacuuming, and mopping. (R. at 32-33.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and RFC. The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 14.) Specifically, the ALJ concluded that Plaintiff's medical records and her description of her daily activities were inconsistent with the amount of pain Plaintiff allegedly experienced. (R. at 15-16.) For example, Plaintiff indicated that she struggled with pain throughout her body, particularly in her lower back. (R. at 32.) However, as the ALJ noted, Plaintiff also testified that she was able to look after and care for her own personal needs, attend to her children's personal needs, volunteer at her child's school, attend weekend outings with her family, drive short distances, shop, use a computer, and play cards. (R. at 12-13, 99, 100-01, 103, 109-11, 117-18, 155-56, 158, 163, 165, 171, 173.) Such activities contravene Plaintiff's assertions of disabling pain. Nonetheless, the ALJ gave Plaintiff's subjective complaints some deference inasmuch as he found that she was limited to performing sedentary work with limitations. (R. at 14-16.)

The ALJ conducted a thorough review of Plaintiff's medical records and subjective complaints of pain, but found that Plaintiff's daily activities and medical record did not correlate

11

to the pain Plaintiff testified that she was experiencing. The ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. (R. at 13-16.) The ALJ noted that the Plaintiff had the severe impairments of degenerative disc disease of the lumbosacral spine with an L5-S1 herniated disc, sacroilitis with possible ankylosing spondylitis, and depression, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12.) The ALJ then found that while such impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible. (R. at 14.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her pain was less then credible. The record additionally indicates that the ALJ, despite his credibility determinations, nevertheless gave deference to Plaintiff's subjective complaints of pain and medical history by finding that she was limited to performing only sedentary work with some additional limitations. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

### 3. Plaintiff claims that the ALJ incorrectly evaluated how her depression affects her RFC.

Plaintiff argues that the ALJ incorrectly evaluated her RFC with respect to her depression. (Pl.'s Mem. at 22-24.) Specifically, Plaintiff contends that the ALJ failed to consider the effects of her depression on a function-by-function basis, and that his finding that she maintains the RFC to perform "simple, routine tasks" fails to account for her moderate

impairments in her abilities to maintain attention and concentration for extended periods, to complete a normal workday or workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Pl.'s Mem. at 23-24.) The Commissioner responds that Plaintiff's argument is a so-called "red herring," and that the RFC assessment is supported by substantial evidence. (Def.'s Mem. at 17-18.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). In evaluating a claimant's mental abilities, the ALJ must first assess the nature and extent of the claimant's mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c); 416.945(c). Under the regulations, a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(c); 416.945(c).

In determining the impact of a mental disorder on an individual's RFC, "essentially the same impairment-related medical and nonmedical information is considered to determine whether the mental disorder meets listing severity as is considered to determine whether the mental impairment is of lesser severity, yet diminishes the individual's RFC." SSR 85-16. Under the listing for mental impairments, the functional limitations of mental impairments, including depression, are assessed using four criteria: activities of daily living; social

13

functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(c).

After determining that Plaintiff's depression, in conjunction with her chronic pain, constituted a severe impairment, the ALJ considered whether Plaintiff's depression and pain met or medically equaled the criteria for the listing for affective disorders, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  (R. at 11-12.)  Affective disorders are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrom.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  To meet the requirements of Listing 12.04, a claimant must produced evidence of medically documented persistence, either continuous or intermittent, of depressive syndrom, manic syndrome, or bipolar syndrom that results in at least two of the following: (1) marked restriction of activities of daily living, marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation.  Id.  Alternatively, a claimant may meet the criteria of Listing 12.04 by demonstrating that she has exhibited repeated episodes of decompensation, a marginal level of adjustment, or an inability to function outside of a highly supportive living arrangement.  Id.

Analyzing Plaintiff's depression and chronic pain under the requirements for Listing 12.04, the ALJ found that Plaintiff had adduced sufficient evidence of medically documented persistence of depressive syndrome.  (R. at 12.)  He then considered whether she had proffered sufficient evidence of at least two of the four functional limitations of marked or extreme severity.  (R. at 12).  With regard to the first limitation, the ALJ found that Plaintiff had no more than a mild restriction of her activities of daily living, as evidenced by her testimony and written statements for the record that despite her impairments (and depending on the level of her pain)

she is able to cook, clean, drive short distances, shop, take care of her children, and take care of her personal needs without assistance. (R. at 12.) Next, he found that Plaintiff had no difficulties maintaining social functioning inasmuch as she is able to interact with her family members, relatives and neighbors, shop, and go on Saturday outings with her husband and three sons. (R. at 12.) Third, the ALJ observed that the limited evidence of psychiatric treatment and counseling suggested that the claimant had a history of attention deficit hyperactivity disorder (with no current evidence of cognitive deficits) in addition to symptoms of depression and pain, but that Plaintiff is able to read, do crossword puzzles, use a computer, play cards, and handle money. (R. at 12.) Based upon this evidence, the ALJ concluded that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. (R. at 12.) Finally, the ALJ found that Plaintiff has not had any episodes of decompensation. (R. at 12.) Based upon his conclusion that Plaintiff had no more than a mild restriction of her activities of daily living; no difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation, the ALJ found that she did not fully meet the criteria for listing 12.04. (R. at 12.)

Having found that Plaintiff did not satisfy the criteria for any listing, the ALJ continued his analysis by determining Plaintiff's RFC to work. (R. at 13-16.) He considered the psychiatric records reflecting Plaintiff's history of attention deficit disorder, depression, and chronic pain, but noted that Plaintiff's symptoms have required limited treatment since July of 2006, and that Plaintiff had testified that her depression had improved with the use of prescribed medication. (R. at 15-16.) He also considered the opinions of the DDS physician, who found that Plaintiff could perform the basic mental demands of competitive work on a sustained basis, and accorded that assessment some, but not controlling weight. (R. at 16.) Based upon this

evidence, the ALJ found that, due to Plaintiff's pain and depression, she was limited to performing simple, routine tasks. (R. at 13-16.)

Plaintiff contends that the ALJ failed to consider the effects of her depression on a function-by-function basis. However, the ALJ conducted a function-by-function analysis of the effects of Plaintiff's depression in order to determine whether that impairment met the criteria for the Listing. While the ALJ did not expressly reference that analysis of Plaintiff's depression under the listing criteria in the course of determining Plaintiff's RFC, the analysis under the Listing undoubtedly informed the ALJ's RFC determination. Indeed, as the Commissioner has noted in a Social Security Ruling, "essentially the same impairment-related medical and nonmedical information is considered to determine whether the mental disorder meets listing severity as is considered to determine whether the mental impairment is of lesser severity, yet diminishes the individual's RFC." SSR 85-16. Additionally, although the ALJ's finding that Plaintiff maintains the RFC to perform "simple, routine tasks" is vague, standing alone, the ALJ and the VE gave those words meaning by identifying three jobs that meet that criteria, namely, addresser, call-out operator, and charge account clerk. Accordingly, the Court recommends a finding that the ALJ's conclusion regarding Plaintiff's RFC accounts for Plaintiff's mental impairments, is based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and, that the final decision of the Commissioner be

AFFIRMED. Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                              _____/s/_____
                                              DENNIS W. DOHNAL
                                              UNITED STATES MAGISTRATE JUDGE

Date: December 10, 2009
Richmond, Virginia